IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CRIMINAL INDICTMENT |
| | : | |
| | : | NO. 1:15-CR-284-AT-JKL |
| MARIO JACKSON, BRANDON REDMOND, DAYNA JOY LIVERMAN, and ANTHONY RICHARDSON Defendants. | : : : : : | |

## **ORDER**

Magistrate Judge John Larkins' Non-Final Report and Recommendation ("R&R")[Doc. 337] is currently before the Court. The R&R recommends the denial of Defendant Jackson's Motions to Exclude DNA Evidence and Request for *Daubert* Hearing [Doc. 72; Doc. 211] as well as the multiple *Daubert* Motions relating to the cell site evidence and expert [Docs. 252, 264, 294, 295] filed by Defendants Jackson, Richardson and Redmond. Defendants Richardson, Redmond, and Liverman have adopted Jackson's Motions Relating to the cell site testimony [Docs. 273, 291, 301, 302] and Defendant Jackson adopted motions filed by Defendants Richardson and Redmond [Doc. 293]. Defendants have filed objections to the Magistrate Judge's R&R that challenge the Magistrate Judge's factual and legal findings. Defendant Jackson challenges the R&R finding that the DNA evidence implicating him is admissible and that a *Daubert* Hearing on the DNA expert is not required. (Doc. 356 at 11.) All Defendants challenge the

Magistrate Judge's finding that Agent Fitzgerald's expert testimony on cell site data is admissible. (Doc. 356 at 11; Doc. 343 at 7-8; Doc. 342 at 2-8; Doc. 355 at 1-8.)

A district judge has broad discretion to accept, reject, or modify a magistrate judge's proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 680 (1980). Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the R&R that is the subject of a proper objection on a de novo basis and any non-objected portion on a "clearly erroneous" standard. Accordingly, the Court has reviewed the Defendants' motions on a de novo basis.

## A. DNA Evidence and *Daubert* Hearing

After he was arrested on July 9, 2015, officers obtained a search warrant for a DNA swab of Defendant Jackson's cheek. (Doc. 43-1.) These cheek swabs were tested against a black ski mask found at the scene of the January robbery in this case[1]. The DNA sample obtained from Jackson matched the DNA obtained from the mask. (Doc. 211-1.) The Government filed a pretrial expert disclosure along with a lab report from the Georgia Bureau of Investigation's (GBI) Division of Forensic Sciences. (*Id.*) This lab report details the methods and procedures used in comparing the mask and Jackson's DNA. (*Id.*)

---

[1] The black ski mask was found wedged between the floor and the rear driver side door of the car belonging to the victims of the January 31 robbery. It is believed that the mask/ hat fell off the robber as he exited the car after forcing the victims at gunpoint to drive to an ATM and withdraw cash. (Doc. 43-1.)

While Jackson does not object to the method of testing utilized, he argues that the DNA evidence is not admissible because the government has not shown that the *collection* methods were proper or "reasonably based on scientific principles." (Doc. 221 at 4-5.) Additionally, he argues that any testimony flowing from this improper collection is also inadmissible. (*Id.*)

The Magistrate Judge recommends denying Defendant's motion related to the DNA evidence and found that a *Daubert* Hearing was not necessary because Jackson supplied "little more than speculation that the masks were contaminated in a manner that would compromise DNA analysis." (Doc. 337 at 71.) He further notes that concerns about DNA collection and transfer procedures go to the weight of the evidence rather than the reliability of the DNA testing itself. (*Id.*) Defendant Jackson objects to this conclusion and argues that collection speaks to chain of custody issues and thus to reliability, though he does not cite to any authority. (Doc. 356 at 11.)

After conducting an independent review, the Court finds that the Magistrate' Judge's legal analysis is correct. Defendant has offered no reason to suspect that the mask was contaminated[2]. Additionally, as the Magistrate Judge noted, Defendant Jackson's objections speak to the weight of the evidence and not the well-established reliability of the DNA testing methodology and process. *See United States v. Warnock*, 1:14-CR-015-AT, 2015 WL 7272208 (N.D.Ga. Nov. 16,

---

[2] If Defendant's attorney, in good faith, contends that the collection methods for the mask were truly compromised so as to have affected the test results, counsel should notify the Court in a memorandum that indicates the actual and specific evidentiary grounds for this contention.

2015) (Docket Entry 100). Defense counsel will have further opportunity to cast doubt on the evidence and testimony through cross-examination at trial. Though a court's decision of whether to conduct a *Daubert* Hearing is discretionary, the Court does not view it necessary on this issue, as the reliability of the GBI's DNA testing methods are "properly taken for granted."[3] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S 137, 152 (1999). Here, the GBI forensic biologist's specialized knowledge will help the trier of fact understand the evidence by explaining the DNA testing process; the testimony is based on the sufficient facts and data; the testimony is based on widely accepted DNA testing methods; and the lab report makes clear that the forensic biologist reliably applied the aforementioned accepted methods to specific facts here, that is the comparison of the mask and the cheek swabs. Under Rule 702, the Government's forensic biologist may present expert testimony as to the DNA evidence. The Court **ADOPTS** the Magistrate's recommendation [Doc. 337 at 72] and **DENIES** Defendant Jackson's Preliminary Motion to Set *Daubert* Hearing [Doc. 72] and **DENIES** his Perfected Motion to Exclude DNA Evidence and Request *Daubert* Hearing [Doc. 211].

### B. Cell Site Evidence and *Daubert* Hearing

The Government has disclosed that it intends to call FBI Special Agent Chad Fitzgerald to testify to the activity and general geographic location of the various Defendants' cell phones at specific times relevant to the crimes charged. (Doc. 264-

---

[3] In the event Defendant's counsel can proffer actual substantive evidence that the GBI's lab was systematically defective or negligent in handling DNA testing, counsel is certainly authorized to alert the Court to this evidence and its implications.

1.) Defendants object on various grounds. Defendants first argue that the Government failed to properly disclose Fitzgerald as an expert under Rule 16(a)(1)(G). (Doc. 252 at 2.) Defendants object to the Magistrate Judge's finding that the Government's disclosure, in a letter to defense counsel on Dec. 8, 2016 (Doc. 264-1), sufficiently describes the witness's opinion, the basis and reasons for those opinions, and the expert's qualifications as required by Rule 16(a)(1)(G).

Defendants also argue that the Government's disclosure is insufficient as it was not supported by the testimony Agent Fitzgerald gave at the *Daubert* Hearing when he stated that he had not yet analyzed the phone records in this case. (Doc. 319 at 6.) The Magistrate Judge found that because Agent Fitzgerald described the methodology he will use and because the government has informed defense counsel what his anticipated opinion will be, there was no Rule 16 violation. (Doc. 337 at 76.) However, because Agent Fitzgerald had not yet applied his methods, the Magistrate Judge recommends that Defendants be allowed to renew their motions at trial upon Agent Fitzgerald's application. (*Id.* at 76 n. 10.)

The Court, however, finds that this matter should be resolved prior to trial. Defendants must be given the opportunity to question Agent Fitzgerald on his analysis of the phone records involved in *this* case. Though defense counsel had opportunity to question Agent Fitzgerald at the *Daubert* hearing in front of the Magistrate Judge (Doc. 337 at 76.), they were not afforded the chance to cross-examine his interpretation of the specific facts at hand (as he had not yet reviewed the relevant records). As such, the Court will entertain a second *Daubert* hearing—

after Agent Fitzgerald has reviewed the facts and records involved in this case—should defense counsel file a motion in pursuit of such a hearing.

That being said, the Court is familiar with and has allowed expert testimony by Agent Fitzgerald in a prior case. The Court suspects that Agent Fitzgerald will similarly qualify as an expert here, once he has reviewed the pertinent records and been subject to cross-examination on his analysis of such records. Defendants question both Agent Fitzgerald's methodology and the use of historic cell site analysis in criminal cases more generally[4]. But historic cell site data analysis and testimony has become widely accepted as based on reliable methods in federal courts around the country and in the Northern District of Georgia. In the R&R, the Magistrate Judge details at length a number of cases in which historic cell site experts have been accepted. (Doc. 337 at 78-82.) In particular, the Magistrate Judge highlights some of the cases in which Agent Fitzgerald himself has testified as a cell site expert[5]. (*Id.*)

As noted above, Agent Fitzgerald has been accepted as an expert before this Court after a thorough *Daubert* Hearing. *See United States v. Thornton*, 1:13-cr-466-AT (N.D.Ga. Dec. 19, 2014) (Docket Entry 65) (finding Agent Fitzgerald qualified as an expert to testify regarding the functioning of cellular

---

[4] Defendants question cell site analysis because: 1) telecommunications networks were not implemented for law enforcement purposes; 2) the quality of cell site data varies; 3) there is difficulty in accurately pinpointing a phone's location based on its tower use; 4) the quality of data varies as the phone travels; and 5) other factors (geographic or environmental, for example) can influence which tower a phone connects to (Doc. 264 at 7.)

[5] *See United States v. Foster*, No. 1:16-CR128-MHC-CMS-2 (N.D.Ga. 2017); *United States v. Jackson*, No. 1:14-CR-77-TWT (N.D.Ga 2015); *United States v. Frazier*, No. 2:15-CR-044-GMN-GWF, 2016 WL 4994956 (D. Nev. 2016).

communication networks, the fundamentals of cell site analysis, and the application of such analysis to the cell phones and cell tower data). In *Thornton*, this Court noted that it would have concerns if Agent Fitzgerald's testimony were to extend beyond the scope of his methodology and attempt to pinpoint precise street locations or make equally specific determinations. *Id.* at 2. The Government has stated that, in this case, Agent Fitzgerald will not testify "that any of the phones were in a precise location during the calls in question." (Doc. 279 at 3.) The Court's concern of overreach, therefore, seems to be addressed at this time.

In sum, though the Court foresees allowing Agent Fitzgerald as an expert witness, the Government has not yet given Defendants proper notice of Agent Fitzgerald's *specific* testimony under Rule 16(a)(1)(G). Therefore, the Court **DENIES WITHOUT PREJUDICE** Defendant Jackson's Motion to Exclude Historic Cell Site Location Information and Request for *Daubert* Hearing [Doc. 252]; **DENIES WITHOUT PREJUDICE** Jackson's Supplemental Motion in Limine to Preclude or Limit Testimony as to Mario Jackson's and Other Defendants' Location Based Upon Cellular Tower Information and for *Daubert* Hearing Regarding Same [Doc. 264]; **DENIES WITHOUT PREJUDICE** Jackson's Perfected Motion to Exclude Historic Cell Site Location Information [Doc. 294]; and **DENIES WITHOUT PREJUDICE** Jackson's Supplemental Motion in Limine to Preclude or Limit Testimony as to Mario Jackson's and Other Defendants' Location Based Upon Cellular Tower Information and for *Daubert* Hearing Regarding Same [Doc. 295]. Thus, the Court also **DENIES WITHOUT**

**PREJUDICE** all other Defendants' motions which adopted the aforementioned motions relating to the cell site evidence and expert [Docs. 273, 291, 293, 301, 302]. Should Defendants wish to engage in a second *Daubert* hearing in which they may question Agent Fitzgerald on the application of his methodology to the instant facts and circumstances, the Court **DIRECTS** Defendants to file a motion requesting a hearing no later than July 24, 2018 and a hearing will be scheduled accordingly. **The GOVERNMENT IS DIRECTED TO SUPPLEMENT BY JULY 19, 2018** the summary of Agent Fitzgerald's anticipated testimony to reflect his opinions relating to the actual facts and circumstances presented in this case.

Finally, as mentioned above, on the issues involving the DNA evidence and expert, the Court **ADOPTS** the Magistrate's recommendation [Doc. 337 at 72] and **DENIES** Defendant Jackson's Preliminary Motion to Set *Daubert* Hearing [Doc. 72] and **DENIES** his Perfected Motion to Exclude DNA Evidence and Request *Daubert* Hearing [Doc. 211].

**IT IS SO ORDERED** this 12th day of July, 2018.

```
                                    _____
                                    AMY TOTENBERG
                                    UNITED STATES DISTRICT JUDGE
```